**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JORGE VAZQUEZ,

        Plaintiff,

v.                                                 Case No. 6:12-cv-1595-Orl-37DAB

ORANGE COUNTY SERVICE UNIT,

        Defendant.

## ORDER

This cause is before the Court on the following:

1. Defendant's Motion for Summary Judgment (Doc. 57), filed November 15, 2013;

2. Plaintiff Jorge Vazquez' Response in Opposition to Defendant Orange County Service Unit's Motion for Summary Judgment (Doc. 66), filed January 3, 2014;

3. Plaintiff Jorge Vazquez' First Supplement to Response (Doc. 68), filed January 10, 2014; and

4. Defendant's Reply to Plaintiff's Responses in Opposition to Its Motion for Final Summary Judgment (Doc. 70), filed February 3, 2014.

Upon consideration, the Court finds that Defendant's motion is due to be granted.

## BACKGROUND

Plaintiff, a Hispanic individual (Doc. 58-2, p. 5), used to work for Defendant, an organization that provides administrative services to two unions in the Orange County School District—Orange Education Support Professionals Association ("OESPA") and

Classroom Teachers Association ("CTA") (Doc. 58-1, ¶¶ 4, 6). Plaintiff served as one of Defendant's "Uniserv Directors," who function as representatives to the unions' members. (*Id.* ¶ 13; Doc. 58-2, pp. 8–10.)

In April 2012, Plaintiff requested a pay increase due to his ability to speak Spanish. (Doc. 58-13.) The request was denied. (Doc. 58-2, p. 59.) Two days later, Plaintiff made a complaint to his supervisor, interim Executive Director Barry Melamed, about two coworkers. (Doc. 58-14.) While the complaint was largely devoted to personality conflicts with the coworkers, it included a paragraph stating that Plaintiff believed that the office was "divided along racial lines" and that he and his minority coworkers were "discriminated against." (*Id.*) About a week later, Plaintiff withdrew his complaint. (Doc. 58-15.)

Also in April 2012, Melamed was approved to become the permanent Executive Director after his interim stint. (Doc. 58-1, ¶ 4.) Plaintiff alleges that he was discriminated against because he was not offered the position. (Doc. 32, ¶ 45.) However, while Melamed had previously served as an Executive Director elsewhere, Plaintiff had no similar management experience.[1] (Doc. 58-2, p. 52.)

When Melamed took the permanent Executive Director position, he examined the budget and noticed discrepancies with Plaintiff's expense reports. (Doc. 58-1, ¶ 17.) Specifically, Melamed discovered that Plaintiff was misreporting his mileage and being reimbursed in excess of the amount to which he was entitled, resulting in a windfall to

---

[1] Another coworker Jim Demchak was given a special title of "Charge Uniserv Director," which came with a salary increase because he was working nights and weekends. (Doc. 58-1, ¶ 23.) Plaintiff alleges that he was discriminated against because he was not offered the position. (Doc. 32, ¶ 46.) Defendant contends that Demchak was uniquely qualified for the position. (Doc. 58-1, ¶ 23.)

Plaintiff of approximately $1,000. (*Id.*; Doc. 58-18, ¶ 4.) Melamed also became concerned about Plaintiff's work behavior, which allegedly included threats of violence to coworkers. (Doc. 58-1, ¶ 18.)

Thus, Melamed contacted an independent investigator to determine whether Plaintiff's conduct warranted discipline (an action mandated by the parties' collective bargaining agreement). (Doc. 58-19.) The investigator interviewed everyone in the office, examined the records, and concluded that Plaintiff had engaged in unprofessional behavior: filing untimely grievances on behalf of the union members whom he represented; overstating his expense reports and failing to provide documentation for charges on his business credit card; and conducting himself inappropriately by yelling, banging on desks, storming out of meetings, and implying that he would commit physical violence against his coworkers. (*Id.* at 21–22.) Based on the investigator's findings, Melamed recommended that Defendant terminate Plaintiff, which it did in June 2012.[2] (Doc. 58-1, ¶ 20; Doc. 58-22.)

Plaintiff then filed a grievance with Defendant, but his termination was upheld. (Doc. 58-26, ¶ 7.) Plaintiff also filed an EEOC complaint alleging that he was discriminated against at work and terminated because he was Hispanic; the EEOC dismissed the complaint because it determined that Defendant did not have enough employees to qualify for Title VII. (Doc. 58-5.) Plaintiff asked the EEOC to reconsider, naming additional purported employees[3] (Doc. 58-7), but the EEOC denied the request because Plaintiff

---

[2] At the same time, Defendant also terminated another employee, Robin Bouey, who had similarly filed untimely grievances and incurred unexplained charges on her business credit card (though she was not alleged to have the same behavioral problems as Plaintiff). (Doc. 58-19, pp. 10–11.)

[3] Those individuals were Jason Wheeler, Steve Conti, Mark Bunker, Minnie Hall,

did not have any evidence to back up his claims (Doc. 58-6).

Plaintiff, proceeding *pro se*, then filed this suit, which alleges three Title VII claims—hostile work environment (Count I), retaliatory discharge (Count II), and disparate treatment (Count III)—as well as a defamation claim (Count IV). (Doc. 32, ¶¶ 81–94.) Defendant moved for summary judgment, arguing that it is not subject to Title VII because it has not employed fifteen or more employees and that Plaintiff's claims fail substantively as a matter of law. (Doc. 57.) Plaintiff responded by producing a hodgepodge of poorly labeled documents, which were quite difficult for the Court to parse. (Docs. 66, 68.) Defendant replied. (Doc. 70). This matter is now ripe for the Court's adjudication.

## STANDARDS

### I.   Summary Judgment

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant carries his burden by showing that there is an absence of evidence supporting the non-movant's case. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict" for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Which facts are material depends on the underlying substantive law. *Id.* The Court must view the evidence

---

and Ernest Munoz, who are distinguished specifically below. *See infra* notes 5–6 and accompanying text.

and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

## II.  Title VII

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To qualify as an "employer" within the meaning of Title VII, the employer must "have fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." *Id.* § 2000e(b). The plaintiff bears the threshold burden of demonstrating that the employer had the requisite number of employees. *See Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1340–41 (11th Cir. 1999); *cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 504 (2006) (noting that the employee-number requirement is an element of the plaintiff's claim).

"[T]he employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 206 (1997). "[O]nly individuals who receive compensation from an employer can be deemed 'employees' under the statute." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1243 (11th Cir. 1998). Compensation is "synonymous with salary or wages." *Owens v. S. Dev. Council*, 59 F. Supp. 2d 1210, 1216 (M.D. Ala. 1999) (citing *Llampallas*, 163 F.3d at 1244 n.14).

**DISCUSSION**

I.     **Title VII (Counts I–III)**

The Court's review of Defendant's comprehensive payroll records from 2010 through 2012 demonstrates that Defendant never had more than fourteen[4] employees on its payroll during the years relevant to Plaintiff's claim. (Doc. S-62; *see also* Doc. 58-4.) Rather, Defendant averaged about eleven employees for most weeks. (*See* Doc. 58-4.) However, Plaintiff argues that other individuals—specifically Steve Conti and Mark Bunker[5]—were employees of Defendant's despite not being on the payroll.[6] (Doc. 66, p. 7.)

The evidence to which Plaintiff points does not corroborate his contentions. At his deposition, Plaintiff admitted that he had no proof that Bunker or Conti were employed by

---

[4] Defendant only had fourteen employees during a single two-week pay period in the three relevant years. (*See* Doc. 58-4.) Thus, Plaintiff needs to identify at least *two* additional employees who worked a minimum of *twenty* weeks in order to meet the jurisdictional threshold (fifteen employees for twenty weeks).

[5] Plaintiff also points to Jason Wheeler as an additional employee. (Doc. 66, p. 7.) However, Wheeler is listed on Defendant's payroll and is included in the employee number calculation. (Doc. S-62; Doc. 58-4; Doc. 70, p. 3.) Many of the other names on Plaintiff's list of purported additional employees—such as James Conlon, Jabari Smith, and Judith Siklosi—were also expressly included on Defendant's payroll. (*See* Doc. 58-4.)

[6] Additionally, Plaintiff lists the names of several other non-payroll individuals as employees, but there is scant evidence in the multitude of documents that Plaintiff produced which actually supports the assertion that any of those individuals was employed by Defendant. (*See* Doc. 66, pp. 4–5.) For instance, Plaintiff mentioned Ernest Munoz, who designed OESPA and CTA's website. (*Id.* at 7.) However, Munoz is not listed on Defendant's payroll, there is no indication that he was otherwise compensated by Defendant, and Plaintiff puts forth no evidence as to how many weeks Munoz was allegedly employed. (*See* Doc. 58-1, ¶ 9.) Similarly, Plaintiff also pointed to Minnie Hall, a custodian who cleaned Defendant's office building. (Doc. 66, p. 4.) Yet, Hall was paid by CTA, as listed on banking records which Plaintiff submitted. (Doc. 68-1, p. 58.) Furthermore, Plaintiff's evidence did not support the employee status of any other listed individuals not specifically referenced herein.

Defendant and that he was just speculating. (Doc. 58-2, pp. 21–24.) Further, both Bunker and Conti averred that they were not employed by Defendant, but rather worked for the Orange County Public School District. (Docs. 58-9, 58-10.) They were members of OESPA and CTA—the unions that Defendant serves—and assisted Defendant with union membership recruitment. (Docs. 58-9, 58-10.) They were not compensated by Defendant; instead, they were paid by grants through the American Federation of Teachers. (Doc. 58-1, ¶ 10; Doc. 58-8, ¶¶ 10–11; Doc. 58-9; Doc. 58-10.) Plaintiff presents nothing to refute this evidence,[7] and indeed, Plaintiff's lack of any such evidence was the reason that the EEOC found that Bunker and Conti were not employees in its investigation. (Doc. 58-6.) Without compensation, there is simply no employee relationship.[8] *See Llampallas*, 163 F.3d at 1243 ("Thus, because the record establishes that [the plaintiff]

---

[7] Plaintiff cites certain emails as purported evidence that Bunker and Conti worked for Defendant. (Docs. 66-7, 66-8.) However, those emails explicitly state that Bunker and Conti work for CTA and OESPA, *not* Defendant; further, Plaintiff cites to nothing at all to dispute the compensation issue. (Docs. 66-7, 66-8.) In fact, Plaintiff himself produced a CTA ledger showing that Conti's and Bunker's salary and benefits were paid by CTA, not Defendant. (Doc. 68-1, p. 43.) Plaintiff's argument improperly conflates Defendant with the unions that it serves and is therefore unavailing. (*See* Doc. 58, ¶ 6.)

[8] Plaintiff does list Stella Mount, who appears to be Defendant's bookkeeper, as an individual to whom Defendant cut checks but who is not listed on its payroll. (Doc. 66, p. 5.) The Court finds that Plaintiff has not met his burden of demonstrating a fact issue with regard to whether Mount is an employee. First, there is no clear picture of how long or how often Mount allegedly worked for Defendant; the records show that she was paid about $400 in December 2011, January 2012, and February 2012 (Doc. 68-1, pp. 60, 62, 71), but there is no indication of whether she worked each workday for at least twenty weeks. Without more, these sporadic checks are not enough to establish an employee relationship. *See Owens*, 59 F. Supp. 2d at 1215–16 (holding that an individual who received only periodic checks for fees and expenses did not receive "compensation" and was not an employee as a matter of law); *see also Llampallas*, 163 F.3d at 1244 (noting that a single $1,000 check to an individual for "nonemployee compensation" was not enough to establish the individual as an employee). More importantly, even if the Court were to count Mount as an employee (which it does not), that still does not bring Defendant over the fifteen-employee hurdle: Plaintiff needs to identify at least *two* additional employees to establish Defendant's qualification for Title VII. *See supra* note 4.

received no compensation as an officer-director of [her purported employer], she cannot be considered an 'employee' of [the employer] for Title VII jurisdictional purposes." (footnotes omitted)).

In sum, Plaintiff's unsubstantiated, speculative assertion that Defendant employed the requisite number of employees is not enough to raise a genuine issue of material fact. Defendant's payroll records remain uncontroverted. Therefore, summary judgment is due to be granted in Defendant's favor on Counts I–III.

## II.  Defamation (Count IV)

Plaintiff did not mention the defamation claim in his opposition to Defendant's summary judgment motion, nor did he offer any evidence in support of his claim. (*See* Doc. 66.) As Plaintiff has not raised a genuine issue of material fact, summary judgment is due to be granted in Defendant's favor on Count IV.[9]

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion for Summary Judgment (Doc. 57) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff.

---

[9] Even if Plaintiff had opposed summary judgment as to this claim, the Court has sincere doubts that it could be pursued as a matter of law. The claim is based on statements made to the investigator during the course of her investigation into Plaintiff's work performance (Doc. 58-2, p. 77); that investigation was part of the grievance and termination procedure in the parties' collective bargaining agreement (Doc. 58-1, pp. 23–24). Such statements are likely entitled to absolute immunity. *See Brown v. Comair, Inc.*, 803 So. 2d 896, 897–98 (Fla. 5th DCA 2002) ("[I]t is undisputed that the letters of suspension were sent pursuant to, and in compliance with, the terms of the parties' collective bargaining agreement. Therefore, the alleged defamatory statements contained within those letters were 'relevant' to the [later] grievance proceeding and thus entitled to absolute immunity.").

3. The Clerk is further **DIRECTED** to close this case. Any upcoming deadlines are **TERMINATED**, and the pretrial conference set for April 17, 2014 (*see* Doc. 33), is **CANCELED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 12, 2014.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

*Pro Se* Party